## Case No. 2,731.

### CITIZENS' BANK v. OBER.

[1 Woods, 80;[1] 13 N. B. R. 328.]

Circuit Court, D. Louisiana. Nov. Term, 1870.

SALE IN BANKRUPTCY—AGREEMENT AS TO BIDDING —PURCHASE BY SOLICITOR OF ASSIGNEE.

1. A person who intends to bid at a cash sale of a bankrupt's estate, may agree, in case he

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

becomes the purchaser, to sell to another person at a fixed price on terms of credit, when he has no notice that such second person has any purpose to bid at the sale, or has the means to make his bid good. Such an agreement will not avoid the sale.

2. A sale of a bankrupt's estate made to a solicitor of the assignee, retained generally in the bankruptcy, will be set aside as against public policy.

This was a petition addressed to the supervisory jurisdiction of the circuit court, under the second section of the bankrupt act. Certain property of York & Hoover, the bankrupts, having been sold and the sale confirmed by the district court, sitting in bankruptcy, this petition was filed to reverse the decree confirming the sale.

[A motion to dismiss this appeal was previously denied. See York's Case, Case No. 18,139, which case also contains a statement of the prior steps had in this proceeding.]

Wm. M. Randolph and H. M. Hyams, for petitioner.

John A. Campbell, for Ober.

WOODS, Circuit Judge. It appears from the record that on the 16th day of February, 1869, two plantations called respectively, "White Hall" and "Home," the property of the bankrupts, were sold at public sale by the assignee to Albert G. Ober, of the firm of Ober, Atwater & Co., said firm being among the mortgage creditors of the bankrupts. The motion to confirm the sale in the bankrupt court was resisted on the ground that the purchaser had used illegal and improper influences to deter other persons from bidding, and that the purchase was made by Ober for and in behalf of Norton, the assignee, and that Norton was in fact the purchaser. The district court referred the question of the fairness and validity of the sale to a commissioner, who reported in favor of the fairness and bona fides of the sale. The district court, after argument, confirmed the report of the commissioner, and it is to reverse this order that the present petition was filed.

The testimony taken by the commissioner establishes conclusively that the assignee was not a party directly or indirectly to the purchase, nor interested therein in any manner or degree; that so far as he was concerned, the sale was conducted fairly and according to law; and the objection that he was interested in the purchase appears to have been abandoned. Relative to the averment that Ober, Atwater & Co. had used illegal and improper influences to deter other persons from bidding, the following facts are established: John S. Scott, about an hour previous to the sale, proposed to Ober, Atwater & Co. that in case they became the purchasers of the "Home" place, he and his friends, whom he represented, would buy the place of them for the price of $35,000, of which $20,000 was to be paid in cash, and the resi-

due, $15,000, in October following the sale. Ober, Atwater & Co. gave Scott the impression that they would sell to him at the price and upon the terms named; but Scott did not inform them that he intended to bid at the sale, nor that he was prepared to pay cash for the property. Scott, who made this arrangement, was ready to bid $35,000 and had the means of his friends at his command to make his bid good. He testifies that he refrained from bidding on account of the arrangement which he supposed he had made to purchase from Ober, Atwater & Co. It is further shown that H. D. Stone, Esq., was the solicitor of the assignee of York & Hoover in the matter of their bankruptcy. That about an hour before the sale, Ober, Atwater & Co., at the suggestion of Stone, made to him the following proposition in writing, the handwriting of the body of the paper being Stone's: "New Orleans, La., Feb. 16. H. D. Stone:—We will sell you White Hall plantation for $20,000 at any time after we purchase it. But you shall not be obliged to take it till our mortgage thereon is judicially determined to be valid as a first mortgage; or you may have one-half of White Hall and Home place for $22,500 at any time, but you shall not be obliged to take it until it is judicially determined that we have a first mortgage upon both places. For value received, we agree to carry out the above proposition in good faith. Ober, Atwater & Co." Ober, of the firm of Ober, Atwater & Co., became the purchaser at the sale of both places; of the Home at the price of $19,800, and of White Hall at $22,000. These are substantially the facts as shown by the evidence.

In regard to the arrangement with Scott, standing alone, I cannot go the length to say that it is sufficient to avoid the sale. In my opinion it is permitted to a party who expects to bid at a sale, when the terms are cash on the day of sale for the whole amount of the purchase price, to agree with another party that in case he becomes the purchaser, he will sell the property to him at a named price on terms of credit. This is clearly so when the person proposing to purchase has no knowledge or notice that the party proposing to buy is prepared to pay cash, and is ready to bid, and able to make his bid good. The proposition for a credit for a part of the purchase money is a strong indication that the party making the proposition is not able to buy at the sale and pay cash, and may well be taken by the person to whom the proposition is made as an admission to that effect. Phippen v. Stickney, 3 Metc. [Mass.] 384; Smull v. Jones, 1 Watts & S. 128. In regard to the proposition made to Stone, it is admitted by counsel for Ober, Atwater & Co., that the assignee could not purchase at his own sale, nor, under the bankrupt law and practice in England, could his solicitor, because, there, the solicitor of the assignee is chosen by the creditors. But,

under our law and practice, it is claimed the rule is different, because here the assignee is allowed to choose his own solicitor, without regard to the wishes of the creditors. I do not see how the method, by which the solicitor is selected, can change the rule. The assignee represents all the creditors. It is his duty so to administer the estate as to produce the best dividends, and so to distribute it as that each creditor shall receive his just rights. To enable him to discharge these duties, the law allows him the assistance of counsel and authorizes payment to his counsel out of the assets of the estate. The solicitor is not the personal counsel of the assignee, but of the assignee as the representative of the creditors. His fees are paid, not by the assignee, but in effect by the creditors. His first duty is to the estate. It is therefore his duty, when he is retained generally in the bankruptcy, to assist the assignee in the interest of all the creditors— to aid him in the collection and just and equitable distribution of the assets, and, if possible, to allow no creditor to obtain an unfair advantage over others. In re Mallory [Case No. 8,990]. With these obligations resting upon him, it is difficult to see why the solicitor should be allowed to purchase at an assignee's sale when the assignee is not. When he becomes a purchaser his interest is to buy at as low a price as he can; his duty as solicitor to the assignee is so to advise his client that the property sold may bring the highest price; so that if he is both purchaser and solicitor, his interest is in conflict with his duty.

Judicial and bankrupt sales ought to be protected by the application of such general rules as to insure the utmost fairness and good faith, and to remove far from those whose duty it is to conduct them or who are in any way officially connected with them, any temptation to fraudulent or unfair practices. If the sale was made to Stone, either directly or indirectly, or if the arrangement made with him was for the purpose of suppressing bidding at the sale, and had that effect; in either case, I should not hesitate to set the sale aside as void. It was not a direct sale to Stone. Was it an indirect one? It is not pretended that Ober, Atwater & Co. bid for Stone; they bid for themselves, expected to pay, and did pay their own money on their bid. They did not agree to let Stone have the property at what they bid for it. The arrangement was that he was to take it at a price fixed between them in advance, and without any reference to the amount at which they bought. It was nothing more than an agreement to sell to him at a fixed price, should they become the purchasers. It was not therefore an arrangement for an indirect purchase by Stone at the assignee's sale, but a contract to buy from a purchaser on an entirely different consideration. Did it have a tendency to

suppress bidding at the sale? Stone swears that he had no intention of bidding, and in this he is uncontradicted. There is no evidence to show that Ober, Atwater & Co. had any suspicion that Stone's purpose was to bid. It did not have the effect to restrain bidding on the part of Ober, Atwater & Co., for it was their interest, with or without the bargain with Stone, to get the property at as low a price as possible. Norton, the assignee, was in utter ignorance of the contract. So was the auctioneer. Stone did not advise about or interfere with the sale. It was conducted fairly, according to law. The understanding with Stone did not have the effect to suppress competition; was, in all probability, not made for that purpose. Stone did not buy, directly or indirectly, at the assignee's sale. Ought the sale to be declared void by reason of his understanding with Ober, Atwater & Co. I think not. The case is in precisely the same plight as if Stone had made an illegal contract with Ober, Atwater & Co., about some matter entirely disconnected with the sale. After a careful consideration of this case, I am unable to say that the understanding of Ober, Atwater & Co., with either Scott or Stone was such as to render the sale fraudulent or against public policy. The district court was therefore right in confirming the sale. The petition to reverse its decree must therefore be dismissed at costs of petitioner.